# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

SOUTHERN-OWNERS INSURANCE
COMPANY,

      Plaintiff,

v.                                       CASE NO.: 5:22cv49-RH-MJF

JUAN FARRERA et al.,

      Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS
## OF LAW ON THE DUTY TO DEFEND JAC

This case presents the question whether an insurer, Southern-Owners Insurance Company, has a duty to defend or indemnify two parties—Jason Andrews Construction, Inc. ("JAC") and Jason Andrews individually—in an underlying state-court lawsuit brought against them by Juan Farrera. The plaintiff in this federal coverage case is Southern-Owners. The defendants are JAC, Mr. Andrews, and Mr. Farrera. The case is before the court following the parties' stipulation for trial on the written record. A prior order concluded that Southern-Owners must defend Mr. Andrews but left open the question whether Southern-

Owners must defend JAC. After additional briefing, this order holds that Southern-Owners does not have a duty to defend JAC.

To put the issue in context, this order repeats some of the findings and conclusions from the order holding Southern-Owners must defend Mr. Andrews and from the order for additional briefing on the duty to defend JAC.

I

Mr. Farrera was working on a construction project when he fell through a roof and was injured. He was working for a roofing subcontractor, DeLeon Construction, LLC. The contractor was JAC. Mr. Andrews was JAC's president, and the name suggests he was also the company's owner.

Mr. Farrera filed a lawsuit in Florida state court against JAC, Mr. Andrews individually, DeLeon Construction, and the project owner. *See* ECF No. 29-4. The third amended complaint in that lawsuit alleged, among other things, that Mr. Andrews was a JAC employee, *see id*. at ¶¶ 46 & 48, that he was Mr. Farrera's supervisor on the project, *id*. at ¶ 13, and that Mr. Andrews was grossly negligent, *id*. at ¶¶ 41 & 42, including by failing to provide Mr. Farrera safety equipment, *id*. at ¶¶ 15 & 27.

JAC was the named insured under a "tailored protection insurance policy"—a policy that included liability insurance—issued by Southern-Owners. ECF No. 1-

1. Also insured under the policy were JAC's "executive officers" with respect to their duties as such. *Id*. at 40.

II

This section of this order repeats the standards set out in the prior orders, which in turn closely tracked *Trisura Specialty Insurance Co. v. Lat 29, Inc.*, No. 4:21cv508-RH-MAF (N.D. Fla. May 12, 2022). The law set out here is well established and not reasonably subject to dispute.

This is a diversity action arising from issuance of an insurance policy in Florida to a Florida insured, so Florida law applies. *See, e.g.*, *Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002). An insurance policy "must be construed in accordance with the plain language of the policy," with ambiguities construed liberally in favor of the insured. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)).

A well-settled principle is critical here:

> Under controlling Florida law, the issue of a liability insurer's duty to defend a lawsuit against its insured is governed by the terms of the insurance policy and the allegations of the complaint. This is sometimes denominated the "eight corners rule," a reference to the relevant inquiry's focus on the four corners of the policy and the four corners of the complaint. If the complaint alleges any claim that, if proven, might come within the insurer's indemnity

>   obligation, the insurer must defend the entire action. Doubts are
>   resolved in favor of the insured.

*Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005) (footnotes collecting authorities omitted); *see also EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1107 (11th Cir. 2017); *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245–46 (11th Cir. 2015); *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005).

There is a narrow exception to the eight-corners rule: an insurer may be relieved of the duty to defend if an undisputed fact takes a claim outside the policy coverage, even if that fact does not appear in the complaint. *See, e.g.*, *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 10 n.2 (Fla. 2004).

The exception does not apply here. To be an insured under the policy, Mr. Andrews had to be a JAC "executive officer" within the meaning of the Southern-Owners policy, and he was. This is clear from the overall circumstances, and Southern-Owners has not denied it. As set out in the prior orders, for the gross-negligence claim against Mr. Andrews to be covered, he had to be a JAC "employee" within the meaning of the Florida workers' compensation statute, and he was. *See* Fla. Stat. § 440.02(15)(a) (2022) (defining "employee" as any "person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire or apprenticeship, express or implied, oral or written"). Nothing prevents an

individual from being both an "executive officer" within the meaning of the policy and an "employee" within the meaning of the Florida statute. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173 (11th Cir. 2023) (acknowledging that a term in an insurance policy can have a different meaning than under a Florida statute and that, on a coverage issue that turns on the policy's meaning, the policy, not the statute, controls).

### III

Southern-Owners frames the issue of its duty to defend JAC as "whether Southern-Owners has what amounts to a vicarious duty to defend JAC because of the Court's conclusion that Southern-Owners has a duty to defend Andrews individually." ECF No. 76 at 1. That is Southern-Owners' framing, not mine. Correctly framed, the issue is whether, under the principles of Florida law set out in section II above, and based on the eight corners of the Southern-Owners policy and the state-court lawsuit's third amended complaint, Southern-Owners has a duty to defend JAC.

### A

Before turning to that issue as properly framed, this order addresses Southern-Owners' vicarious-duty argument. That argument starts with the assertion that Southern-Owners has no duty to defend Mr. Andrews because, under Florida law, he has workers' compensation immunity. The policy includes a

workers' compensation exclusion that, at least under the prevailing law as noted in the prior orders, applies to any insured who has workers' compensation immunity from the claim at issue.

The applicable Florida statute provides immunity to an employer—this includes JAC—subject to specified exceptions. *See* Fla. Stat. § 440.11. The statute says the immunity extends to an employee for acts within the scope of employment, but not for acts of gross negligence. *Id.* § 440.11(1)(b)2. The statute says the immunity extends to a supervisor for acts in that capacity, but not for qualifying criminal violations. *Id.* More completely, the statute says this about the immunity of employees or supervisors:

> The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to *an employee* who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with *gross negligence* when such acts result in injury or death or such acts proximately cause such injury or death, nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment. The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, *corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity* and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and *was not a violation of a law*, whether or not a violation was charged, for which the maximum penalty

>which may be imposed does not exceed 60 days' imprisonment as set forth in s. 775.082.

*Id.* (emphasis added). The statute almost surely has a scrivener's error: "does not exceed" in the last full line almost surely should be "exceeds" 60 days' imprisonment.

The state-court lawsuit's third amended complaint asserts Mr. Andrews acted with gross negligence. Southern-Owners says, though, that the statute's gross-negligence provision does not apply to Mr. Andrews, because he was a supervisor, not a fellow employee. There is no apparent reason why one cannot be both a supervisor, as to some tasks, and a fellow employee, as to others, or both a supervisor and fellow employee as to the same task. The third amended complaint alleges, for example, that Mr. Andrews had a duty to "maintain" and "inspect" the job site. ECF No. 29-4 at ¶ 24 & 26. Those tasks might well be performed by a supervisor, member of the workforce, or single individual acting in both capacities.

When any allegation in a complaint is within an insurance policy's coverage, the insurer must defend the entire action. For the third amended complaint to show on its face that Mr. Andrews has workers' compensation immunity, the third amended complaint's factual allegations would have to show he was grossly negligent only as a supervisor, never when acting as a fellow employee. The allegations do not show this.

To be sure, Southern-Owners would have a duty to defend Mr. Andrews based on the gross-negligence allegations only if he acted not just as a fellow employee (within the broad definition of "employee" under the Florida workers' compensation statute) but also as an executive officer (within the meaning of the policy); otherwise he would not be an insured. But nothing in the third amended complaint is inconsistent with the view that Mr. Andrews acted in both capacities. It has happened more than once that the owner and chief executive of a small, closely held corporation has been both the manager and a laborer—has both managed the employees and swept the floors. Or perhaps maintained and inspected the premises while acting both as an executive officer and part of the crew.

The third amended complaint's gross-negligence allegations are sufficient to trigger the duty to defend Mr. Andrews.

Perhaps more importantly, even if Mr. Andrews acted only as a supervisor and thus has workers' compensation immunity except for illegal conduct, the third amended complaint includes sufficient allegations of illegal conduct to trigger the duty to defend. *See Maxum Indem. Co. v. Massaro*, 817 F. App'x 851, 861 (11th Cir. 2020) (holding that a workers' compensation exclusion did not apply to an action against a supervisor alleging illegal conduct).

The third amended complaint explicitly alleges Mr. Andrews failed to provide "fall protection equipment" and failed to ensure compliance with

"applicable laws." ECF No. 29-4 at ¶ 28.A. & F. Failure to provide a roofer with fall-protection equipment is a violation of the Occupational Safety and Health Act, punishable by imprisonment of up to six months and a fine of up to $10,000. *See* 29 U.S.C. § 666(e); 29 C.F.R. §§ 1926.500–503.

To be sure, the third amended complaint does not cite OSHA or the fall-protection rule and does not set out the penalties for OSHA violations. But Mr. Farrera was not asserting an OSHA claim, nor could he. He was asserting a state-law tort claim. There was no need to cite the federal statute or rule, because under Florida pleading standards, a complaint need not cite applicable statutes or rules, even when, unlike here, they establish the cause of action. *See, e.g.*, Fla. R. Civ. P. 1.110(b); *Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer*, 265 So. 3d 715, 719 (Fla. 2d DCA 2019) ("To state a cause of action, a complaint must allege *sufficient ultimate facts* to show the pleader is entitled to relief.") (emphasis added).

It thus was sufficient for Mr. Farrera's third amended complaint to allege the pertinent facts. It did. This triggered the duty to defend. An insurer's duty to defend is not defeated merely because a complaint does not cite a statute or rule that is not the basis of the cause of action but that, if not present, would support a not-yet-pled immunity defense. Even more clearly, an insurer's duty to defend is not defeated merely because a complaint does not cite a statute or rule that, if not present, would support the defendant's nonparty insurer's coverage defense.

Moreover, had Southern-Owners advanced at the outset of this federal litigation the same argument it makes now, Mr. Farrera almost surely could and would have sought leave to file a fourth amended complaint in the state-court action, citing the OSHA provisions and eliminating any doubt about the duty to defend. Indeed, he could probably do so now. *See* Fla. R. Civ. P. 1.190(a).

This does not, however, mean that Southern-Owners has a vicarious duty to defend JAC. Vicarious duty to defend is not a thing.

B

Whether Southern-Owners has a duty to defend JAC turns not on whether it has a duty to defend *Mr. Andrews* but on whether, under the terms of the policy as applied to the third amended complaint, Southern-Owners has a duty to defend *JAC*.

The policy's workers' compensation exclusion applies to any claim against a defendant who has workers' compensation immunity from that claim. Under Florida Statutes § 440.11(1), JAC—Mr. Farrera's employer as that term is used in the statute—has immunity, unless one of the statutory exceptions applies. Two are possibilities.

1

Under § 440.11(1)(a), an employer loses its liability if it "fails to secure payment of [workers'] compensation as required." When that happens, an injured

employee or, in the case of death, the employee's legal representative may elect to pursue workers' compensation or, alternatively, an action at law. Nothing in the state-court third amended complaint suggests the inapplicability of this exception to workers' compensation immunity. Quite the contrary: for all that appears in this record, the state-court lawsuit is precisely the kind of action at law that § 440.11(1)(a) authorizes.

This does not mean, however, that Southern-Owners has a duty to defend the state-court lawsuit. An employer's failure to obtain workers' compensation coverage as required opens the employer to tort liability to an injured employee, but this does not render inapplicable a workers' compensation exclusion in the employer's liability insurance policy. Two Florida district courts of appeal have squarely so held. *See Florida Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890, 892–93 (Fla. 3d DCA 1997); *Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678 (Fla. 4th DCA 2009); *see also Southern-Owners Ins. Co. v. TMR Constr., Inc.*, No. 21-14124, 2022 WL 19561401, at *5 (S.D. Fla. June 2, 2022) ("The fact that an insured fails to maintain the statutorily mandated workers' compensation insurance does not preclude the applicability of an insurance policy's workers' compensation exclusions.").

The Florida Supreme Court has cited *Revoredo* and *Williams* with apparent approval. *See Morales v. Zenith Ins. Co.*, 152 So. 3d 557, 562–63 (Fla. 2014). And

in any event, there is no persuasive reason to believe the Florida Supreme Court would reach a different result. *Revoredo* and *Williams* thus must be followed here. *See, e.g.*, *Molinos Valle Del Cibao, C. por A. v Lama*, 633 F.3d 1330, 1348 (11th Cir. 2021) (requiring federal courts to follow Florida district court decisions on Florida law absent a persuasive reason to believe the Florida Supreme Court would reach a different result).

2

As set out above, § 440.11(1)(b)2 creates exceptions to immunity that may apply to Mr. Andrews: a fellow employee is not immune from an employee's gross-negligence claim, and a supervisor is not immune from an employee's claim based on a qualifying violation of law. *See* Fla. Stat. § 440.11(1)(b). This is why Southern-Owners has a duty to defend Mr. Andrews.

But the statute does not explicitly extend these exceptions to the employer itself. Not surprisingly, then, Florida district courts of appeal have said the exceptions do not apply to the employer. *See Vallejos v. Lan Cargo S.A.*, 116 So. 3d 545, 551 (Fla. 3d DCA 2013) (holding that the gross-negligence exception to workers' compensation immunity applies only to claims against fellow employees, not to claims against the employer); *Pendergrass v. R.D. Michaels, Inc.*, 936 So. 2d 684, 689 (Fla. 4th DCA 2006) ("[T]he criminal acts exception set forth in the statute on its face does not apply to the corporate defendant itself, only to

individuals who are officers, directors, or managing agents, i.e., actual persons."); *Cabrera v. T.J. Pavement Corp.*, 2 So. 3d 996, 998 (Fla. 3d DCA 2008) (Wells, J.) (holding that the criminal-acts exception to workers' compensation immunity "does not, as *Pendergrass* confirms, apply to corporate defendants").

In asserting the contrary, Mr. Farrera cites *Hunt v. Corrections Corp. of America*, 38 So. 3d 173, 176 (Fla. 1st DCA 2010). There employees sued an employer and sought to avoid workers' compensation immunity based on a different exception—the unrelated-works exception. Under that exception, workers' compensation immunity does not protect an employee whose negligence injures a fellow employee if the employees were assigned primarily to unrelated work. *See* Fla. Stat. § 440.11(1)(b). The First District held the exception inapplicable because there was no reference to the allegedly negligent fellow employee in the operative pleadings. In dictum, the court said that when the unrelated-works exception applies, an employee may recover against the employer under the doctrine of respondeat superior; workers' compensation immunity does not protect the employer for claims within the scope of the fellow employee's duties. This was dictum addressing only the unrelated-works exception, which is not involved here. And to the extent the unrelated-works exception should be treated the same for this purpose as the gross-negligence and criminal-acts

exceptions, the dictum is simply wrong. *Vallejos*, *Pendergrass*, and *Cabrera* have it right.

This conclusion is consistent not only with the text of the exceptions to fellow-employee and supervisor immunity but also with the statute's explicit adoption of different, more limited exceptions to an employer's immunity. An employer is not immune when the employer "intended to injure the employee." Fla. Stat. § 440.11(1)(b)1. And the employer is not immune when the employer "engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee," if the danger was not apparent and the employer concealed it. *Id*. § 440.11(1)(b)2. These exceptions to immunity do not apply here because the third amended complaint in the underlying lawsuit does not allege facts implicating the exceptions.

There is no reason to believe the Florida Supreme Court would reach a result different from *Vallejos*, *Pendergrass*, or *Cabrera*. The gross-negligence and criminal-acts exceptions to immunity do not apply to JAC.

Language in *Morales v. Zenith Insurance Co.*, 152 So. 3d 557, 562 (Fla. 2014), should not be read to the contrary. There the court held that an insurer did not have a duty to indemnify an employer for a default judgment entered against the employer in an underlying wrongful-death action. This was so, the court said,

based on the governing policy's workers' compensation exclusion—an exclusion like the Southern-Owners exclusion at issue here. The employer would have had workers' compensation immunity had it defended the wrongful-death action and invoked the immunity; there was no applicable exception to workers' compensation immunity. The holding accords with settled law: an insurance policy's workers' compensation exclusion of this kind applies to tort claims from which the insured at issue has workers' compensation immunity.

Citing *Wright v. Hartford Underwriters Ins. Co.*, 823 So. 2d 241 (Fla. 4th DCA 2002), the *Morales* court recognized another settled principle: when there is an exception to workers' compensation immunity, there is also an exception to the insurance policy's workers' compensation exclusion. This principle is applicable to Mr. Andrews here and explains why Southern-Owners has a duty to defend him. Properly understood, the exception to a policy's workers' compensation exclusion applies only to an insured as to whom there is an exception to workers' compensation immunity: if immunity, then an exclusion from insurance coverage; if no immunity, then no exclusion from insurance coverage.

But the *Morales* court did not explain it quite this way, perhaps because the need for congruence between the exception to immunity and the exclusion from coverage was not at issue there. *Morales* said that in *Wright*, the employer was held vicariously liable to an employee based on a fellow employee's gross

negligence, and the court said this "removed [the employee's] claim from the exclusivity of Florida's Workers' Compensation Law, thereby implicating a gap in his employer's workers' compensation insurance for the employer liability insurance to fill." *Morales*, 152 So. 3d at 562. On its face, the language may suggest that an employer can be held vicariously liable to an employee for a fellow employee's gross negligence—gross negligence for which the fellow employee has no workers' compensation immunity—and that an insurer must cover such a claim against the employer, notwithstanding the governing policy's workers' compensation exclusion. But this is dictum that should not be read to adopt this as controlling Florida law.

  The better view, as set out in *Vallejos*, *Pendergrass*, and *Cabrera*, is that the exceptions to workers' compensation immunity for gross negligence and criminal acts apply to fellow employees and supervisors, respectively. The better view is that these exceptions do not apply to employers. And the better view is that an insurance policy's workers' compensation exclusion is congruent with workers' compensation immunity. This means the policy excludes coverage for claims from which the insured at issue has immunity—or would have had immunity had the employer obtained workers' compensation coverage as required. But the policy does not exclude coverage for claims from which the insured at issue does not have

immunity or would not have had immunity had it obtained workers' compensation coverage as required.

Southern-Owners has a duty to defend Mr. Andrews because the third amended complaint alleges facts that, if true, would deny him workers' compensation immunity. But Southern-Owners does not have a duty to defend JAC, because it would have had workers' compensation immunity had it obtained workers' compensation coverage for its employees as required. The policy's workers' compensation exclusion applies.

IV

For these reasons, Southern-Owners does not have a duty to defend or indemnify JAC. This order so declares. This order does not direct the entry of a Federal Rule of Civil Procedure 58 final judgment because an appeal is pending from the earlier declaration that Southern-Owners must defend Mr. Andrews. That declaration apparently has been appealed under 28 U.S.C. § 1292(a)(1) as the functional equivalent of an injunction. But in due course a Rule 58 judgment will need to be entered. Entry of such a judgment now, while the prior appeal is pending, might be deemed improper.

IT IS ORDERED:

1. It is declared that Southern-Owners does not have a duty to defend or indemnify JAC on claims asserted against it in Juan Farrera's pending state-court lawsuit.

2. All further proceedings are stayed until the United States Court of Appeals for the Eleventh Circuit issues its mandate in the pending appeal in this case.

3. The clerk must submit a copy of this order and ECF No. 78 to the Clerk of Court of the Eleventh Circuit for inclusion with the record in the pending appeal, No. 23-12161-G, if the Eleventh Circuit deems it appropriate.

SO ORDERED on December 9, 2023.

s/Robert L. Hinkle<br>United States District Judge